No. 88-557

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN RE THE MARRIAGE OF
MARY LOU MILLER,

Petitioner and Appellant,

and

DALE LEE MILLER,

Respondent and Respondent.

APPEAL FROM:  District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joan Meyer Nye; Nye & Meyer, Billings, Montana

For Respondent:

James D. Rector; Rector & McCarvel, Glasgow,
Montana

Submitted on Briefs:  May 11, 1989

Decided:  July 18, 1989

Filed:

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Fifteenth Judicial District Court, Roosevelt County, Montana, the Honorable M. James Sorte presiding. In this marriage dissolution action, appellant appeals that portion of the District Court's findings of fact, and conclusions of law pertaining to the property distribution of the marital estate. We reverse and remand.

Mary Lou and Dale Miller were married on March 7, 1964 and remained married for a period of some twenty-four years. Three children were born of the marriage, two sons, both of legal age at the time of the dissolution, and one daughter who has since reached majority.

Respondent Dale Miller (hereinafter referred to as the husband) has been a farmer/rancher most of his life. The appellant, Mary Lou Miller (hereinafter referred to as the wife) cared for the family home, raised the three children, assisted with various farm duties and worked outside the home at assorted jobs. Those jobs included work as a substitute school teacher, school bus driver and retail sales clerk.

The wife filed her petition for dissolution of marriage on April 5, 1985, and requested the court divide the marital and personal property equally between the parties. The husband answered the petition on April 18, 1985, and admitted that the court should divide the property equally. However, two years later, the husband filed with the District Court two reports, one on June 1, 1987 and one on June 29, 1987, regarding his premarital property. These reports claimed totally different marital assets. The husband asserted in these two reports that he had owned various personal property

2

and land prior to the marriage. The husband requested the District Court deduct the value of his premarital property from the total of the marital estate before it made its determination and distribution, and that the value of his premarital property should be awarded solely to him. In addition, the husband asserted that part of the value of the land the parties acquired during the marriage should also be deducted from the marital estate prior to division and be awarded to the husband as his sole premarital and gifted property.

On August 23, 1988, the District Court entered its Findings of Fact, Conclusions of Law and Decree and found the net worth of the marital estate to be:

Total assets: $318,936.50
Total liabilities: $12,950.00
Total (net) marital estate: $305,986.50

The District Court distributed the total net estate as follows: $70,812 to the wife (or 23% of the total marital estate) and $235,174.50 to the husband (or 77% of the total marital estate).

On appeal the wife claims the District Court's division of property was not supported by the record. She takes specific objection to the court deducting, prior to division, the following: the present value of all personal property the husband claimed he owned at the time of the marriage but did not own at the time of the dissolution; the full value of land both parties received by gift in 1970 from the husband's mother; the claimed discount below market value in the purchase price at which the husband's parents sold certain land to the parties during the marriage; and all premarital land of the husband.

3

The husband claimed that, with personal funds owned prior to the marriage, he paid for all land the parties purchased during the marriage, specifically from the husband's parents. In addition to land the husband purchased in 1954, he claimed sole personal ownership, prior to the marriage of the following items: 1958 MM GB tractor; 1956 Oliver 88 tractor and loader; 1952 Ford 8N tractor; 1957 Ford 2-ton truck; 1954 Oliver 33 combine; 1953 MF 10 baler; 1957 IHC swather; 1958 Cockshutt tool bar; 1957 John Deere disk; John Deer plow; 1961 Farmhand rake; 1963 Ford pickup; 1954 Ford pickup; pickup camper; Aluma Craft boat and trailer with 40 hp Johnson motor; water well; 85-90 head of cows; 12 bulls; 2 horses; saddle; 500 bushels alfalfa seed; hay, oats and barley; cow shed; buildings moved from other place; fences; two 1100-bushel steel bins; 2 fuel tanks; cattle chute; tools and chain saws; approximately 9 guns; and $7,000 in savings bonds.

It should be noted that the wife's original attorney dropped out of the case a month or two prior to the case being heard by the District Court and certain matters were stipulated or allegedly stipulated to prior to new counsel taking the case. Part of the alleged stipulation went to the above-listed premarital property. The wife's counsel objected, alleging a stipulation as to the deduction of premarital assets was never entered. Testimony at trial concerning the value of the husband's premarital property was not supported by qualified estimates or appraisals, as reflected in the husband's testimony on cross-examination:

Q [By wife's attorney] Do you know what the price of registered cows were on March 7th, 1964?

A No.

4

Q So that this figure of a thousand dollars is just a guess, isn't it?

A Yes.

Q Is the camper, boat, motor and trailer still in existence?

A It was traded in since then.

Q And you don't have any appraisal or no written documents to reflect what its value was on March 7th, 1964, do you?

A No.

Q So then that value is speculation as well.

A Yes.

The extent of the wife's contribution to the farm operation and its many related tasks, was disputed by both parties. The District Court heard testimony regarding the wife's contribution to the farm operation from the husband, the wife, one of their sons and various friends and neighbors. After hearing the testimony, the District Court found that the wife made a "negligible contribution" to the farm and the ranch operation.

This Court finds error with the District Court finding the wife made a "negligible contribution." The record reveals just the opposite; she raised the parties' three children, was a helping hand on the ranch, was primarily responsible for the ranch home and town home, and worked outside of the home at various jobs.

The wife objects to the District Court's findings of fact, specifically Nos. 15, 16, 19 and 20. In finding No. 15 the wife objects to the court's finding that while she had

received a $3,700 settlement for a personal injury, an injury incurred prior to the marriage and the settlement received after the marriage, that the District Court found "[t]he $3,700.00 was not used for any land payments or as contribution towards the marital estate."

In finding No. 16 the wife objects to the court's finding that the husband paid for the land purchased from his parents during the marriage with money "[d]irectly traceable and attributable to the premarital assets of the [husband]."

In finding No. 19 the wife objects to the court's finding that the she "[d]oes have an opportunity for future acquisition of substantial capital assets through inheritance" from her father if she out-lives him. The District Court did not note that she is one of eight children in her family, and according to the wife's testimony at trial the oil wells owned by her father were not in operation due to the shutdown of many of the oil fields in eastern Montana.

In finding No. 20 the wife objects to the court's finding that the husband "[h]as little or no opportunity for the acquisition of capital assets or income," even though the record indicates that he received money from mineral leases on the property and that during the years of the parties' marriage, he has received substantial income from those mineral leases.

Following trial, the wife moved for a new trial, presenting bank documents to show that findings 15 and 16 were clearly erroneous. Her motion for a new trial was denied and the District Court adopted the summary order prepared by the husband's attorney. The wife now appeals that distribution.

6

Numerous issues have been presented on appeal, but in view of the fact that we are returning this matter to the District Court, only two issues will be discussed to clarify the matter on remand. Those issues are:

1. Did the District Court err in applying the "not unconscionable" standard of § 40-4-201, MCA, instead of the "equitable" standard under § 40-4-202, MCA, for division of property by the court where the parties had no agreement on division of property?

2. Did the District Court abuse its discretion in setting over $218,220 of the marital estate to the husband before dividing the marital property, without properly considering the wife's contributions to the marriage, resulting in an inequitable division of the marital estate?

The "not unconscionable" standard is contained in § 40-4-201, MCA, which in pertinent part states:

> (2) [t]he terms of the separation agreement . . . are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties . . . that the separation agreement is unconscionable.

The foregoing section limits the application of the standard of unconscionability to the case where a separation agreement is presented to the court. No agreement was proposed in the present case.

As a result, the appropriate standard required of the court is contained in § 40-4-202, MCA, which states in pertinent part:

> (1) In a proceeding for dissolution of a marriage, . . . the court, without regard to marital misconduct, shall, . . . finally equitably apportion between the

7

parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage . . ., the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties; . . . and the opportunity of each for future acquisition of capital assets and income.

Clearly, the standard of equitable apportionment set forth in § 40-4-202, MCA, is not comparable to the standard of unconscionability set forth in § 40-4-201, MCA. In the present case, the District Court adopted without significant change the property description proposed by the husband, and in doing so applied a standard that the proposal was not unconscionable. That does not meet the statutory test of § 40-4-202, MCA.

In the present case, the court was required to "finally equitably apportion" the property and assets and was further required to take into consideration a number of factors which are not even mentioned in the other code section. We conclude that the District Court's "not unconscionable" finding does not constitute a finding of equitable apportionment. We conclude that the District Court must review all of the elements contained in § 40-4-202, MCA, and make a determination of equitable apportionment following the provisions of that section. We hold that the application of the "not unconscionable" standard of § 40-4-201, MCA, in the present case constitutes reversible error.

The second issue is whether the court abused its discretion in setting over $218,220 of the marital estate to

8

the husband before dividing the marital property, without considering the wife's contributions to the marriage.

This Court in In re Marriage of Brown (1978), 179 Mont. 417, 422, 587 P.2d 361, 364, noted the standard of review where we set forth the following:

> The standard for reviewing the property division in a dissolution decreed by a District Court is well settled in Montana. The apportionment made by the District Court will not be disturbed on review unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice. In re Marriage of Blair (1978), Mont., 583 P.2d 403, 405, 35 St.Rep. 1256; Vivian v. Vivian (1978), Mont., 583 P.2d 1072, 1074, 35 St.Rep. 1359; Eschenburg v. Eschenburg (1976), 171 Mont. 247, 557 P.2d 1014, . . . Porter v. Porter (1970), 155 Mont, 451, 473 P.2d 538.

In addition, in In re Marriage of Hall (Mont. 1987), 740 P.2d 684, 686, 44 St.Rep. 1321, 1323, we noted:

> We have concluded that in a property distribution review in marriage dissolution, this Court will reverse a district court only upon a showing that the district court has acted arbitrarily or has committed a clear abuse of discretion, resulting in either instance in substantial injustice.

In the case at bar, the District Court's findings of setting over to the husband all premarital property and all property derived from his parents, are very similar to the district court's findings in Brown. We note, however, the unfairness of the order herein where the gift of land by the husband's mother to the parties was not made to just one

9

party but to both the husband and the wife, and such land has been in both of their names. Here the duration of the marriage was substantial, twenty-four years, considerably longer than the fourteen years in Brown. We note in the case at bar the District Court went further than the district court in Brown. The court here gave full credit for unappraised personal property which the husband claimed he owned at the time of the marriage. As a direct result, the court divided the property with 77% going to the husband and only 23% to the wife. The record does not disclose evidence which establishes that the unappraised personal property was still in existence at the time of the dissolution or that it was "acquired in exchange" for such property, as referred to and described in § 40-4-202, MCA. The District Court also did not grant any value to the wife's contribution to the ranch and marriage.

With regard to the 640 acres of land, the court did not have valuations or appraisals as of the date of dissolution. The only values given were those in effect prior to the marriage.

With regard to the property owned by the husband prior to marriage, there is no evidence that any part of this property is still in existence. There were no adequate appraisals of the values of such property, only estimates. The court valued the property at $129,900 without substantiated appraisals.

We also conclude that in the absence of evidence disclosing that such $129,900 worth of property was in existence or was traceable to property now in existence, such property could not be considered. As stated in Glasser v. Glasser (1983), 206 Mont. 77, 87, 669 P.2d 685, 690, "if

10

inheritance funds are not traceable, then they may not be considered as separate property of the spouse." While the trial court has discretion to select or reject appraisal values, provided there is substantial credible evidence to support the values, there must be evidence to support the trial judge. See In re Marriage of Williams (Mont. 1986), 714 P.2d 548, 554, 43 St. Rep. 319, 327. We conclude that it was an abuse of discretion to set over to the husband $129,900 in value of property on the basis of the alleged premarital personal property brought into marriage by the husband.

In addition, we find that the trial court abused its discretion in setting over to the husband the full value of land deeded by the husband's mother:

240 acres - gift from mother in 1970
    108 acres of farmland at $155 per acre . . $16,740
    132 acres of grassland at $35 per acre. . .  4,620
                      Total gift - $21,360

It is undisputed that the husband's mother transferred title to both the husband and the wife. There is no evidence that the gift was intended entirely for the husband, nor did testimony indicate whether $20,000 of the parties' marital savings was paid to the husband's mother for this land. The court failed to make any findings as to a claim by wife of payment for the land.

While the couple separated in early 1985, we note the husband was in full possession of all cropland, some of which had been in the names of both husband and wife, because the mother gave it to the parties jointly. Yet, the wife received no proportionate share of income from that land between the time of the separation and the time of the final dissolution decree. During the husband's testimony under

cross-examination, he admitted that the wife had some interest in the land by virtue of her name appearing on the deed. In 1987, during the period between the separation and the final decree, the income from the land (which included government payments and total crop production) was declared for tax purposes at $38,895.

In 1986, the total farm income, calculated for taxation purposes, including depreciation, government payments, etcetera, showed a cash flow in excess of $20,000 after taxes. Additionally in 1985, the year the parties separated, the farm had a cash flow of approximately $11,000. We conclude the District Court erred by inequitably dividing the marital property.

Reversed and remanded for proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12

Mr. Chief Justice J. A. Turnage, dissenting:

I respectfully dissent from the majority decision finding error in the division of the marital estate and remanding this cause for further proceedings. I would affirm the decree of the District Court.

The majority, in part, appears to be concerned about valuation of certain marital property. In Finding of Fact No. 12, the court found that the parties had prepared and filed a stipulation as to the value of the marital estate. In light of that finding, there should be no dispute about valuations.

The standard of review needs no citation. However, as a reminder, we have adopted this standard:

> A District Court has far-reaching discretion in dividing the marital property. Our standard of review is that the District Court's judgment, when based upon substantial credible evidence, will not be altered unless a clear abuse of discretion is shown.

In Re Marriage of Stewart (Mont. 1988), 757 P.2d 765, 767, 45 St.Rep. 850, 852. The obvious reason for adopting this standard of review in marital cases was the recognition that the District Court inevitably is called upon to exercise its discretion based upon the court's opportunity to personally observe the witnesses and hear the testimony in relation to the discrete circumstances of the marriage of the parties. This opportunity afforded the District Judge is not available to this Court, and we should not presume to second-guess the District Judge.

The findings of the District Court fairly establish that the wife has, for a considerable period of time during the marriage, found employment away from the farm and the husband has continuously devoted his time to the management of the farm. The result of the individual effort of the parties in their separate endeavors produced almost equal incomes over a five-year average with the wife's income exceeding somewhat that of the husband.

13

Recent agricultural history would indicate operations comparable to that of the husband's farm are barely break-even propositions. If the agricultural assets were to be distributed in part to both parties, it would be almost inevitable that this family farm would cease to exist.

_____
Chief Justice

Mr. Justice L. C. Gulbandson and Mr. Justice William E. Hunt, Sr., join in the foregoing dissent of Mr. Chief Justice J. A. Turnage.

_____
_____
Justices

14