No. 95-258

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF
MARTIN PAUL GRIFFIN,

Petitioner, Respondent and
Cross-Appellant,

and

NANCY LIEN GRIFFIN,

Respondent and Appellant.

FILED

JAN 17 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fifth Judicial District,
                In and for the County of Beaverhead,
                The Honorable Ed P. McLean, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Edmund P. Sedivy, Jr.; Morrow, Sedivy & Bennett,
                Bozeman, Montana


        For Respondent:

                John S. Warren; Schulz, Davis & Warren, Dillon,
                Montana


                        Submitted on Briefs:   December 21, 1995

                                    Decided:   January 17, 1996

Filed:

_____
           Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Nancy Lien Griffin appeals, and Martin Griffin cross-appeals, from the June 16, 1994, Findings of Fact, Conclusions of Law and Partial Judgment and the December 2, 1994, Order and Final Judgment of the Fifth Judicial District Court, Beaverhead County, regarding the distribution and valuation of the marital estate, a business owned by the parties, and child support. We affirm in part, reverse in part, and remand.

We consider the following issues on appeal:

1. Did the District Court err in making its determination of the option purchase price set for the parties' business?

2. Did the District Court err in granting Nancy a new option to purchase the parties' business?

3. Did the District Court err in not ordering Martin to return the vacation pay?

4. Did the District Court err in its determination of back child support?

5. Did the District Court err in allowing certain items of personal property to remain in Martin's possession?

6. Did the District Court err in determining that Martin did not have to indemnify Nancy with regard to two claims asserted against the parties' business?

7. Did the District Court err in requiring Martin to return the condemnation proceeds he received from the State of Montana to the parties' business?

Martin Griffin (Martin) and Nancy Lien Griffin (Nancy) were married on February 4, 1978. Four children were born of the marriage. During their marriage, the parties established and operated the Madison Lumber Company (MLC). The parties' marriage

2

was dissolved in 1991 and Martin and Nancy were granted joint custody of the children, with Nancy designated as the primary residential custodian. In the Decree, Martin was awarded MLC while Nancy was granted a 180-day option to purchase MLC. Both parties appealed from the District Court's determination. In re Marriage of Griffin (1993), 260 Mont. 124, 860 P.2d 78. This is the parties' second appeal arising out issues raised in their dissolution of marriage. In the first appeal, we remanded the case to the District Court for findings regarding the option contract to purchase MLC, a determination of child support due under the Uniform Child Support Guidelines, and valuation of certain items in the marital estate. Marriage of Griffin, 860 P.2d at 84-86. A complete discussion of the facts underlying this dispute is set forth in this Court's opinion in the first appeal. Marriage of Griffin, 860 P.2d at 80-84.

Following the first appeal, on remand, Nancy filed a motion for summary judgment attempting to exercise her option to purchase MLC. The District Court denied her motion and set the matter for a hearing on April 26, 1994. After hearing testimony from a business appraiser, the District Court entered its Findings of Fact, Conclusions of Law and Partial Order on June 16, 1994. The District Court determined that Nancy should have the opportunity to purchase the business for $323,305. Nancy exercised her option to purchase MLC and, on August 17, 1994, took control of MLC.

1.    Did the District Court err in making its determination of the option purchase price set for the parties' business?

Nancy alleges that the District Court made mathematical and

3

accounting errors in determining the $323,305 option price set for MLC. However, we note that Nancy voluntarily exercised her option to purchase MLC and paid the amount set by the District Court. In exercising her option, she voluntarily complied with the District Court's order. Where a party has voluntarily complied with a judgment or court order, as Nancy did in exercising her option, that party can be deemed to have waived objection to that aspect of the judgment or court order. Turner v. Mountain Eng'g and Constr., No. 95-329, slip op. at 7 (Mont. Jan. 11, 1996) (citing State ex rel. Hagerty v. Rafn (1956), 130 Mont. 554, 557-58, 304 P.2d 918, 920-21). In so complying, Nancy has waived her objection and cannot now proceed inconsistently in pursuing an appeal as to the option price. See Turner, No. 95-329, slip op. at 11 (Mont. Jan. 11, 1996) (citing Martin Dev. Co. v. Keeney Co. (1985), 216 Mont. 212, 220, 703 P.2d 143, 147-48). If Nancy objected to the valuation of MLC, she should not have exercised her option to purchase MLC based upon that valuation. In paying the amount set by the District Court, Nancy negated any alleged error in the valuation of MLC. Turner, No. 95-329, slip op. at 6 (Mont. Jan. 11, 1996) (citing Gates v. Deukmejian (9th Cir. 1993), 987 F.2d 1392, 1408). That is, she is deemed to have waived any objection to the option price. Accordingly, we do not consider the merits of Nancy's argument that the District Court over-valued MLC.

2.    Did the District Court err in granting Nancy a new option to purchase the parties' business?

In his cross-appeal, Martin alleges that the District Court erred in granting Nancy a new option to purchase MLC. Based on the

4

foregoing reasoning, Martin can also be said to have waived any objection to the option contract when he allowed the transaction to proceed. Turner, No. 95-329, slip op. at 6 (Mont. Jan. 11, 1996). Even assuming the District Court exceeded the scope of its jurisdiction on remand, Martin waived any objection by not raising this issue at the District Court. Instead, Martin accepted the $323,305 and transferred his stock in MLC. Thus, we do not consider whether the District Court abused its discretion in granting Nancy a new option to purchase MLC.

3. Did the District Court err in not ordering Martin to return the vacation pay?

On August 1, 1994, just prior to Nancy's taking control of MLC, Martin withdrew $3,000 from MLC which he argues he was entitled to as vacation pay. Nancy asserts that Martin was not authorized to make such a withdrawal from MLC and disburse it to himself and, further, that the withdrawal was in violation of the District Court's earlier order which required Martin to properly manage MLC during the pendency of the proceedings. Nancy filed a motion to declare Martin in contempt on September 6, 1994.

Evidence regarding the vacation pay issue was presented at a hearing held on November 30, 1994. However, in its Order and Final Judgment and Decree of December 2, 1994, the District Court made no ruling regarding Martin's withdrawal of the $3,000 in vacation pay. Thus, from the record, we are unable to determine whether the District Court abused its discretion in not requiring Martin to return the $3,000 of vacation pay. See In re Marriage of Smith (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525. Accordingly, we

5

remand this issue to the District Court to determine whether Martin was entitled to the vacation pay.

4. Did the District Court err in its determination of back child support?

In reviewing a district court's award of child support, we consider whether the district court abused its discretion. In re Marriage of DeWitt (Mont. 1995), 905 P.2d 1084, 1086, 52 St.Rep. 1089, 1090 (citing In re Marriage of Craib (1994), 266 Mont. 483, 490, 880 P.2d 1379, 1384). In the first appeal, we remanded the issue of child support to the District Court to determine Martin's child support obligation under the Uniform Child Support Guidelines. Marriage of Griffin, 860 P.2d at 88. On remand, the District Court referred the determination and calculation of child support to Ann Steffens, a child support guidelines specialist with Guidelines Consulting, ordering her to apply the guidelines and submit her recommendation to the court.

Nancy now asserts that the amounts listed on MLC's financial statements as "shareholder loans" should have been included in Martin's income in computing the amount of child support due under the guidelines. We agree. The monies withdrawn as "shareholder loans" from MLC, along with materials taken from MLC's inventory, were taken for Martin's personal use. Thus, these amounts should have been included in Martin's gross income for purposes of computing his child support obligation. We note that income includes "expense reimbursements or in-kind payments received by the parent in the course of self-employment or operation of a business if such reimbursements or in-kind payments reduce personal

6

living expenses." 46.30.1508(1)(b), ARM. Accordingly, the full amounts of the "shareholder loans" and materials taken from MLC inventory should have been listed as other income on Martin's child support worksheets. We remand for a determination of the child support due when all of Martin's income, including the shareholder loans and materials taken from MLC, is included in the computation.

    5.    Did the District Court err in allowing certain items of personal property to remain in Martin's possession?

The standard of review of a district court's division of marital property is whether the district court's findings of fact are clearly erroneous. Marriage of DeWitt, 905 P.2d at 1087 (citing Marriage of Smith, 891 P.2d at 525); In re Marriage of McLean (1993), 257 Mont. 55, 61, 849 P.2d 1012, 1015. Where substantial credible evidence supports the court's findings and judgment, this Court will not alter the district court's decision unless there is an abuse of discretion. In re Marriage of Maedje (1994), 263 Mont. 262, 266, 868 P.2d 580, 583.

In the original Findings of Fact and Conclusions of Law, dated November 14, 1991, Nancy was awarded the "contents of the family home" listed at a value of $20,290. In this appeal, Nancy asserts that the award was to include certain items of property, namely: an acoustic guitar, stationary bicycle, raft, mountain bike, children's ski gear, cabinets, and a stereo system. Martin counters that at the time of the 1991 order and decree that these items were not located at the family home, rather, they were in his possession or at a condominium located at Big Sky, Montana. Nancy

7

values this property at $8,100, however, from the record it is not clear whether that was the value of the property in 1991 or at the time of the hearing. The District Court noted that most of the items at issue were of inconsequential value. Essentially, Nancy argues that she has not received $8,100 of the $20,290 in property that she was awarded. Martin asserts that these items were not "contents of the family home," and, alternatively, that the distribution of the marital property was equitable.

We note that the district court has broad discretion in distributing the marital assets and this Court will not disturb an equitable apportionment of the marital assets when it is clear that the district court was acting within its discretion. In re Marriage of Danelson (1992), 253 Mont. 310, 319, 833 P.2d 215, 221. Here, the District Court ordered that the children's ski gear should be delivered to the children, however, the court did not compel Martin to return the remainder of the items to Nancy. Finally, we note that in Nancy's original proposal for distributing the marital estate, Martin would have been awarded each of the items now at issue. From the record it is clear that the District Court was acting within its discretion and the distribution of the marital estate was not clearly erroneous.

6. Did the District Court err in determining that Martin did not have to indemnify Nancy with regard to two claims asserted against the parties' business?

At the time Nancy exercised her option to purchase MLC, one lawsuit was pending against MLC and a second suit was filed on November 16, 1994. Both suits arise out of events that occurred

8

while Martin was in control of MLC. Nancy argues that these contingent liabilities were not considered in the appraisals of MLC and, as a result, MLC was overvalued. The first suit sought $20,035, however, it has now been dismissed with prejudice. The second suit seeks $27,850 plus interest and attorney's fees.

In its Final Judgment and Decree of December 2, 1994, the District Court stated "[s]hould any judgments be rendered against Madison Lumber Company in those two suits, such judgments are valid liabilities against the Company, and Nancy purchased the Company's liabilities as well as its assets." We agree with the District Court. In any event, we note that the first claim has been dismissed with prejudice. Based upon the evidence before the District Court, it was within the court's broad discretion to deny Nancy's motion for indemnification. As the District Court noted, Nancy purchased the assets of the corporation as well as its liabilities.

7. Did the District Court err in requiring Martin to return the condemnation proceeds he received from the State of Montana to the parties' business?

In reviewing a district court's findings of fact, we determine whether the findings are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906 (citing Columbia Grain Int'l v. Cereck (1993), 258 Mont. 414, 417, 852 P.2d 676, 678). We have adopted a three-part test to determine whether findings are clearly erroneous. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. The test provides that: (1) the Court will determine whether the findings

9

are supported by substantial evidence; (2) if the findings are supported by substantial evidence, the Court will determine if the district court has misapprehended the evidence; and (3) if the findings are supported by substantial evidence and that evidence has not been misapprehended, this Court may still find that a finding is "clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." DeSaye, 820 P.2d at 1287 (citing United States v. United States Gypsum Co. (1948), 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746).

In 1992, the State of Montana condemned .14 acres of MLC's land to widen a highway. MLC was paid $7,500 by the State for this condemnation, a portion of the proceeds was allocated to the taking of the .14 acres and the remainder was allocated to site improvements, including a new gravel area and fence. However, instead of depositing the $7,500 in an MLC account, Martin endorsed the check and gave it to his father in partial payment for a motor home that Martin had lived in for one and one-half years. Nancy alleged that the condemnation proceeds were the property of MLC and, as such, should be returned so that the visibility of and access to MLC, which had been impaired by the widening of the highway, could be restored. The District Court agreed, determining that the proceeds were property of MLC and should be returned. Substantial evidence supports the District Court's determination that the condemnation proceeds should be returned to MLC. Accordingly, we affirm the District Court on this issue.

10

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11