FILED

04/18/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0387

DA 16-0387

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 92

IN RE THE MARRIAGE OF:

DARIN BROCKINGTON,

        Petitioner and Appellee,

   and

DEBORAH BROWN,

        Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District,<br>In and For the County of Flathead, Cause No. DR-06-110(C)<br>Honorable Heidi Ulbricht, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

           Katherine P. Maxwell, Maxwell Law, PLLC, Kalispell, Montana

      For Appellee:

           Peter F. Carroll, Attorney at Law, Kalispell, Montana

                          Submitted on Briefs:  March 22, 2017

                                    Decided:  April 18, 2017

Filed:

                                      _____
                                            Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Deborah Brown (Deborah) appeals an order entered in the Eleventh Judicial District Court on June 3, 2016, amending the parenting plan for her minor child, A.E.B. Deborah also appeals an order entered August 4, 2016, holding her in contempt and assessing costs and attorney's fees for the contempt proceedings against her, although the District Court has not yet determined the reasonableness of fees or assessed costs. We affirm the District Court's order amending the parenting plan and dismiss, without prejudice, Deborah's appeal of the contempt order.

¶2 We restate the dispositive issues as:

1. *Whether the District Court abused its discretion in determining the amended parenting plan was in the best interests of A.E.B.*

2. *Whether Deborah's appeal of the separate order of contempt is from a final judgment.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Darin Brockington (Darin) and Deborah are the parents of A.E.B., born in 2000. Their marriage was dissolved in 2007 and an Order Establishing Parenting Plan was entered on August 6, 2008 (2008 Plan). The 2008 Plan provided that A.E.B. would reside primarily with Deborah and that Darin, who serves in the United States Army as a Lieutenant Colonel, would have parenting time "both in Montana and his place of residence, wherever that may be." Both Darin and Deborah have remarried. Darin lives with his wife, Donna, in Manassas, Virginia, along with Donna's children from a previous marriage. Deborah currently resides in Kalispell, Montana, with her husband, Jeff, and A.E.B.

2

¶4    The District Court noted that both parents are exceptional in their parenting abilities and their devotion to their daughter.  Nonetheless, there has been great acrimony between Darin and Deborah with respect to their co-parenting obligations.  In particular, Darin and Deborah have been unable to agree on the appropriate amount of time Darin should spend with A.E.B., as well as where Darin's parenting time should take place.  Darin has lived in other locations besides Virginia, depending on where he is stationed in the Army, including in Mons, Belgium.  The 2008 Plan provided that Darin have parenting time with A.E.B. any time he was in Montana, for a period not to exceed ten days.  Aside from certain holidays and alternating birthdays, Darin was to exercise the majority of his parenting time in the summer.  The 2008 Plan provided specifically for the summers of 2008, 2009, and 2010, with visits varying in length from 43 to 49 days.  These summer visits were to take place at Darin's residence, wherever that was.

¶5    Although the 2008 Plan did not address summer visits for the years following 2010, the parties assumed the visits would continue every summer.  Thus, in 2011 A.E.B. spent 48 days with her father in Virginia; and in the summers of 2013 and 2014, A.E.B. spent 49 days in Mons, Belgium.  For the 2012 summer, which was when Darin moved to Belgium, Darin requested A.E.B. spend only 18 days with him in Virginia prior to his relocation.  The understanding between Darin and Deborah remained that A.E.B. would always return from Darin's care in sufficient time for her to attend the first day of school in Montana.

¶6    Notwithstanding the parties' ability to arrange summer visitations beyond the particular years identified in the 2008 Plan, disputes between Darin and Donna over co-parenting obligations apparently existed as early as 2006, prompting the District Court

3

to appoint Nancy Smith (GAL) to be A.E.B.'s guardian ad litem in 2006.[1] In the 2008 Plan, the District Court ordered that "[i]n the event there needs to be some form of dispute resolution regarding the parenting plan in the future, that the GAL shall be the first resource in resolving disputes between parties[.]"[2] Since her appointment, the GAL has made several recommendations to the court regarding parenting time.

¶7 Darin covets his parenting time. He has always felt that A.E.B. should spend more time with him, not less. The record on appeal shows that it is not unusual for him to spend substantial time and money on the travel and logistics necessary for him to parent A.E.B. Even while he resided in Belgium, he ensured he did not lose his allotted time with A.E.B. by securing for her a military passport and paying for her airfare to Belgium. Darin also takes advantage of provisions in the 2008 Plan allowing him to parent in Montana for continuous periods not to exceed ten days. Darin has traveled to Montana to exercise parenting time, renting a car and securing a hotel room to spend time with A.E.B. These trips not only cost him money, but deplete the leave he accrues in the Army.

¶8 Deborah's home with Jeff, as A.E.B.'s primary residence, has been beneficial for A.E.B. She excels at school and is active in extracurricular activities like volleyball and basketball. She has friends and is, in most ways, a well-adjusted teenager. She attends

---

[1] In 2003, Deborah filed a Petition for Dissolution, which she later dismissed. Darin subsequently filed his Petition for Dissolution in 2006, resulting in the parties' dissolution in 2007 and the 2008 Plan.

[2] The 2008 Plan was ordered by the Honorable Stewart E. Stadler. The proceedings to amend the 2008 Plan were presided over by the Honorable Heidi J. Ulbricht, who replaced Judge Stadler upon his retirement.

4

church regularly and volunteers when she can to serve at its concession stand. She also works on occasion at her mother's hardware store. She is not immune from teenage tribulations, however, and the record reflects that she has become expressive of her desire to be more independent and to make decisions for herself. In this regard, A.E.B. has expressed that she wants to spend more time in Montana during the summers, despite Darin's wishes that he have more time with her. Although they enjoy certain activities together, A.E.B. has expressed that her stepmother Donna is prone to anger, and that her father and Donna must often work when she visits, leaving her in the care of her stepsiblings or structured day-camps. The 2008 Plan also mandates that A.E.B. regularly call Darin at certain times during the week. A.E.B. does not enjoy these mandatory calls and would enjoy texting, Skyping, and emailing Darin instead. Overall though, A.E.B. primarily complains that her summers away with Darin interfere with her life in Kalispell, which results in her friends accruing experiences during the summer to which she cannot relate when she returns to Montana.

¶9 Deborah filed a motion to amend the 2008 Plan on April 21, 2014, several months shy of A.E.B.'s fourteenth birthday. Deborah alleged that a change of circumstances had occurred and that A.E.B.'s best interests necessitated amending the parenting plan. Specifically, Deborah sought the amendment based on A.E.B.'s desire to stay in Kalispell over the summers and noted that A.E.B. "reached a stage in her development when social activities, sports, events, jobs and friendships [in] Kalispell, Montana are of significant and increasing importance[.]" Darin responded to the motion by requesting its dismissal or, alternatively, a referral to the GAL for closer review. The District Court denied Deborah's

motion and referred the matter to the GAL for recommendations, to be filed by September 15, 2014, when A.E.B. would be at least fourteen. Over the summer of 2014, while A.E.B. visited Darin in Mons, Belgium, the GAL conducted her investigation, communicating with A.E.B. by Skype and email. After concluding her investigation, the GAL filed recommendations with the District Court, along with her own motion to adopt her recommendations as an interim parenting plan. The GAL recommended that Darin's parenting time occur only in Montana; that his time be reduced in the summer to either one or two weeks, which must be exercised in Montana; and that A.E.B.'s mandatory phone calls to him cease. The GAL's proposed "Final Parenting Plan" also contained the following provision: "In the event there needs to be some form of dispute resolution regarding the parenting plan in the future, Nancy M. Smith, GAL, shall be the first resource to mediate the dispute. The parties shall follow any written recommendation of the GAL pending further order of the court." On December 2, 2014, Deborah filed a motion to adopt the GAL's recommended parenting plan.

¶10 On December 18, 2014, Darin filed a motion to stay any proceedings pursuant to the Servicemembers Civil Relief Act, 50 U.S.C.S. §§ 3901, *et seq*. (SCRA), which allows for the stay of civil proceedings while members of the military serve abroad. Darin, nonetheless, clearly objected to the GAL's recommendations. The District Court granted Darin's motion to stay proceedings pursuant to SCRA and vacated a hearing which had been scheduled for February 19, 2015.

¶11 Darin continued to communicate with Deborah that he wished to have parenting time as he had previously exercised under the 2008 Plan. Specifically, Darin asked that

A.E.B. spend time with him at his Virginia residence for one month. Deborah refused and offered instead that he could visit A.E.B. in Montana. She believed that the 2008 Plan was outdated, that it was not in A.E.B.'s best interest, and that the SCRA stay of the proceedings had abated it. In May of 2015, Darin requested the court enforce a 2015 summer visit. On June 25, 2015, Darin again requested the court compel summer parenting time for 2015 and also to hold Deborah in contempt. Darin made another request for parenting time on August 3, 2015. The court maintained, however, that it was unable to consider any of Darin's requests because of the stay. Darin finally filed a motion to lift the stay on August 3, 2015, which was granted by the court on August 21, 2015. While the District Court did not act on the motions filed by either party due to the stay, the court did interview A.E.B. at Deborah's request, concluding that an interview of A.E.B. would not violate the SCRA stay because it did not involve the parties.

¶12 After the stay was lifted, the court conducted a hearing over two days, November 24, 2015, and February 24, 2016. The District Court issued its Findings of Fact, Conclusions of Law and Order on June 3, 2016, rejecting the GAL's proposed parenting plan and amending the 2008 Plan. The court found that, in deference to A.E.B.'s wishes and despite Darin's desire to maintain contact with his daughter, the GAL's proposed plan allowed Darin only one to two weeks in June and would "severely curtail Darin's opportunity for parenting time with A.E.B." The court found that the GAL had inappropriately shared information only with Deborah and did not provide an equal opportunity for input from Darin. The court determined that "the GAL has demonstrated a perceived preference toward Deborah" and a "willingness to interfere with Darin's

7

parenting opportunities." The court also found that "the GAL [had] clearly encouraged A.E.B. to believe she [would] not have to spend time in Virginia." The court determined that Deborah's interests in keeping A.E.B. in Kalispell, which aligned with the GAL's recommendations, would "unreasonably [attempt] to limit or outright suspend Darin's parenting opportunities." Finding that "[t]he failure of both Deborah and the GAL to recognize the benefits of the continuing relationship between A.E.B. and her father's extended family is without precedent in this court[,]" the court terminated the GAL's appointment, concluding the GAL had become an ineffective means in assisting the parties to share parenting opportunities. The court directed the parties to use a mediator in the future, if necessary, and proceeded to determine the shared parenting obligations for A.E.B.

¶13    In its order amending the 2008 Plan, the court noted that A.E.B., during the in-chambers interview, expressed that she would like fewer days in the summer with her father. The court expressly stated that it considered AEB's wishes, but would not defer to them entirely. The court determined that the best interests of A.E.B. were served by having summer activities in both Montana and Virginia. Because the court found that Darin had demonstrated a consistent commitment to shared parenting and his responsibilities to A.E.B., Darin's time with A.E.B. in Virginia was reduced in accordance with A.E.B.'s wishes, but only by approximately two weeks. Darin was to exercise four weeks of parenting time during the month of July. The court was not willing to reduce Darin's parenting time to one or two weeks to be exercised only in Montana, as suggested by Deborah and recommended by the GAL. Darin's opportunities to continue parenting in Montana were left intact, including every spring break until A.E.B. graduates from high

school.  The court also left the holiday schedule established by the 2008 Plan in place and determined that Deborah and Darin should share the cost of A.E.B.'s travel equally. Finally, the court expressed concerns over Deborah encouraging A.E.B. to limit her contact with her father and concluded that Deborah failed to recognize that parenting time with both parents was in A.E.B.'s best interests.

¶14    The District Court entered its order amending the 2008 Plan on June 3, 2016.  The court ordered that A.E.B. was to travel to Darin's home no later than July 1, 2016, and that Darin was to have parenting time during the month of July for the years 2016, 2017, and 2018.  On June 15, 2016, Darin emailed Deborah a travel itinerary which had A.E.B. departing for Virginia on July 1, 2016, and returning to Montana on July 31, 2016. Deborah, however, expressed difficulty understanding the amended 2008 Plan and indicated she would be seeking other options.  On June 30, 2016, Deborah filed an appeal from the District Court's judgment amending the 2008 Plan and filed a motion in the District Court to stay its judgment.  The next day, on July 1, the District Court denied Deborah's request for stay.

¶15    A.E.B., however, did not travel to Virginia.  Darin immediately filed a motion for an order to show cause and for contempt against Deborah, asking for enforcement of the court's orders.  The court denied the motion, reasoning that Deborah's appeal had removed the matter from the district court's jurisdiction. Darin filed a petition for writ of supervisory control on July 18, 2016, which this Court granted, in part, on July 26, 2016. Or. Granting Pet. for Writ of Supervisory Control in Part, *Brockington v. 11th Jud. Dist. Ct.*, https://supremecourtdocket.mt.gov/search/getDocument?documentid=149335 (Mont. Jul.

9

26, 2016) (No. OP 16-0423). This Court concluded that, pursuant to *Kuzara v. Kuzara*, a district court in a contempt proceeding arising out of a domestic matter has the authority to enforce its judgment even though an appeal is pending in the underlying domestic proceeding. 211 Mont. 43, 48, 682 P.2d 1371, 1374 (1984). We remanded the matter to the District Court for proceedings consistent with our order.

¶16 The District Court held a hearing August 3, 2016, on Darin's motion for contempt. Both parents were present and the court considered testimony from several other witnesses. Ultimately, the court concluded that Deborah had failed to abide by her shared parenting obligations as set forth in the Amended Parenting Plan when she "encouraged, if not solicited outright, A.E.B.'s active involvement in defiant actions to withhold from Darin parenting time granted to him in a court ordered parenting plan." The court found that much of Deborah's testimony was not credible and that Deborah continued to try and convince the court that "Virginia was boring," that A.E.B. would miss too many opportunities in Montana, and that A.E.B.'s Christian faith would suffer as a result of having to visit her father during July. The court held Deborah in contempt because her failure to abide by her obligations of shared parenting "compels a clear and direct response." The court assessed a fine of $500 per day for each day in July that Deborah failed to deliver A.E.B. to Darin for exercise of his parenting time, or a total of $15,500, but allowed Deborah to purge her contempt by immediately arranging with Darin to meet her and A.E.B. prior to August 8, 2016, at either Dulles International or Reagan National Airport, for Darin to have parenting time of not less than 31 days. Deborah was ordered to pay all costs of travel for A.E.B. and to reimburse Darin for all of his costs, including travel

10

expenses and the value of lost leave from his military service. Deborah was also ordered to pay the costs and Darin's attorney's fees incurred in the contempt proceedings.

¶17 After the court entered its finding of contempt, according to Darin, A.E.B. traveled to Virginia, apparently without incident, for parenting time with Darin and a visit with A.E.B.'s extended family. Darin filed his affidavit of costs and attorney's fees with the court. Due to a continuance of the hearing on reasonableness of attorney's fees, requested by Deborah and unopposed by Darin, attorney's fees and costs had not been determined by the District Court as of the time of the instant appeal.

## STANDARDS OF REVIEW

¶18 We review findings of fact related to amendments of parenting plans to determine whether they are clearly erroneous. *In re Marriage of Everett*, 2012 MT 8, ¶ 11, 363 Mont. 296, 268 P.3d 507; *In re Marriage of Graham*, 2008 MT 435, ¶ 8, 347 Mont. 483, 199 P.3d 211. When findings upon which a decision is predicated are not clearly erroneous, we will reverse a district court's decision regarding a parenting plan amendment only when a clear abuse of discretion is demonstrated. *Graham*, ¶ 8; *In re Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, 46 P.3d 49. A trial court abuses its discretion when it acts "arbitrarily without employment of conscientious judgment or exceed[s] the bounds of reason resulting in substantial injustice." *Everett*, ¶ 11; *Albrecht v. Albrecht*, 2002 MT 227, ¶ 7, 311 Mont. 412, 56 P.3d 339.

¶19 A contempt proceeding in a family law proceeding "is entirely independent of the civil action out of which it arose." *Kuzara*, 211 Mont. at 48, 682 P.2d at 1374. In civil cases, an aggrieved party may appeal from "a contempt judgment or order in a family law

11

proceeding when, and only when, the judgment or order appealed from includes an ancillary order entered as a result of the contemptuous conduct which affects the substantial rights of the parties involved[.]" M. R. App. P. 6 (3)(j). The right of a natural parent to parent one's child is a constitutionally protected, fundamental liberty interest. *Steab v. Luna*, 2010 MT 125, ¶ 22, 356 Mont. 372, 233 P.3d 351.

¶20    "[A]ny decree which leaves matters undetermined is interlocutory in nature and is not a final judgment for purposes of appeal." *Kircher v. W. Mont. Regl. Community Mental Health Ctr.*, 261 Mont 227, 229, 861 P.2d 927, 929 (1993). We explained in *In re Marriage of Griffin*, that for a decree to be final it must reserve no further questions or directions for further determination. 260 Mont. 124, 135, 860 P.2d 78, 85 (1993). Lastly, M. R. App. P. 4(1)(a) provides that "[a] final judgment conclusively determines the rights of the parties and settles all claims in controversy in an action or proceeding, including any necessary determination of the amount of costs and attorney fees awarded or sanction imposed."

**DISCUSSION**

¶21    1. *Did the District Court abuse its discretion in determining the Amended Parenting Plan was in A.E.B.'s best interests?*

¶22    Deborah argues that the District Court failed to give appropriate weight to the recommendations of the GAL. More specifically, Deborah maintains that the GAL was intricately involved with the parties and A.E.B., "often as an arbitrator," and that since 2006 "the Court relied upon her and assigned to her an ongoing role to assist the parties in dispute resolution." Deborah also takes issue with the court's failure to address interim parenting plan arrangements while the SCRA stay was in place. Here we discern

12

Deborah's argument to be that the court erroneously faulted Deborah for not allowing A.E.B. to visit Darin during the 2015 summer when it was actually the court, through its misunderstanding of the SCRA, which was responsible for Darin not having any 2015 summer visitation. Finally, Deborah argues that the District Court did not adequately consider A.E.B.'s wishes because the court continued to provide summer parenting time for Darin. Darin argues that the record supports the District Court's conclusions and that Deborah is unable to establish error in any of the court's findings.

¶23 In addressing Deborah's assertion that the court failed to appropriately weigh and consider the GAL's recommendations, we must begin with an explanation of a guardian ad lietem's duties and role in family law proceedings. A court may appoint a guardian ad litem pursuant to § 40-4-205, MCA, to "represent the interests of a minor dependent child with respect to the child's support, parenting, and parental contact." Section 40-4-205(1), MCA. A guardian ad litem has the general duties of informing and making recommendations to the court concerning the child's support, parenting, and parental contact following any investigation necessary to ascertain the facts relevant to such an inquiry. Section 40-4-205 (2)(a)-(c), MCA. While a guardian ad litem may also "perform other duties as directed by the court" under § 40-4-205(2)(e), MCA, the responsibility and obligation of a guardian ad litem when performing any of its duties is always to "represent the interests of a minor dependent child[.]" Section 40-4-205(1), MCA.

¶24 By contrast, the 2008 Plan designates for the GAL to facilitate disputes, which would have been continued under the GAL's proposed plan whereby she would continue her role "mediating" disputes, interjected the GAL into disputes between the parties,

13

Deborah and Darin, surrounding what each believed were their co-parenting obligations. Yet, mediation is a process in which an impartial third-party facilitates communication and negotiation and promotes voluntary decision making by the parties to the dispute. By way of illustration, the *Model Standards of Conduct for Mediators* provides that "[i]mpartiality means freedom from favoritism, bias, or prejudice." Model Stand. of Conduct for Mediators Standard II (ABA 2005).[3] A mediator must avoid a conflict of interest or the appearance of a conflict during and after the mediation. "A conflict of interest can arise from involvement by a mediator with the subject matter of the dispute or from any relationship between a mediator and any mediation participant, whether past or present, personal or professional, that reasonably raises a question of a mediator's impartiality." Model Stand. of Conduct for Mediators Standard II (ABA 2005).

¶25    Montana provides for mediation of family law disputes. The "purpose of mediation is to reduce the acrimony that may exist between the *parties* and to develop an agreement that is *supportive* of the best interests of the child involved in the proceeding." Section 40-4-302(1), MCA (emphasis added). The mediator "must have knowledge of the mediation process[,]" and while the parties may stipulate to a mediator not maintained on the mediator list established by the court pursuant to § 40-4-306, MCA, there are no statutory provisions which sanction a dual appointment as both guardian ad litem and mediator in the same proceeding. Section 40-4-307(5), MCA. Indeed, the statutory provision for appointment

---

[3]    The 2005 Model Standards were approved by the American Bar Association's House of Delegates, the Board of the Association for Conflict Resolution, and the Executive Committee of the American Arbitration Association.

of a guardian ad litem is distinct and separate from those statutory provisions offering the parties an opportunity to mediate their disputes. *See* § 40-4-205, MCA, and §§ 40-4-301 to -308, MCA.

¶26 Based on the foregoing principles, it is clear that the duty of a guardian ad litem to *represent the interests* of the child is inconsistent with the obligation of a mediator to be impartial and free from favoritism or bias, with no involvement in the subject matter of the dispute. Indeed, the guardian ad litem's duty to represent the child's interest in the dispute cannot be honored while at the same time honoring the obligation of a mediator to be an impartial third-party. The duties of each role are distinct and serve different functions in the delivery of justice. To emasculate or blend the roles only undermines the integrity of each process, whether it is the appointment by a judge of a guardian ad litem for fact-finding purposes or the selection of a mediator to facilitate communication, negotiation, and voluntary decision making by the parents in an alternative dispute resolution forum.

¶27 Contrary to Deborah's assertions, it is readily apparent that the District Court did consider and appropriately weigh the recommendations of the GAL, as it was those recommendations which led, in part, to the court vacating her appointment. It is evident from the court's findings that it appreciated the GAL was no longer effectively performing her duty to represent A.E.B.'s interests. The court observed the GAL's recommendation to severely limit Darin's parenting time was inconsistent with the best interests of A.E.B. because she failed to recognize the significance to A.E.B. of a continued relationship with her father and A.E.B.'s extended family. The court found that the GAL's position, which aligned and advocated the position of a party, Deborah, was "without precedent in this

15

court." The court found that the GAL had clearly encouraged A.E.B. to believe she will not have to spend time in Virginia and that the GAL had failed to share information with Darin or provide an equal opportunity for input from him. Deborah does not argue that these findings were clearly erroneous, only that the court failed to attribute the proper weight to the GAL's recommendation. We disagree. The record supports that the District Court clearly considered the GAL's recommendations, but did not agree with them. Moreover, the District Court appropriately recognized that the GAL should not serve as a mediator in the same proceeding when it directed the parties to a "mediator, if needed."

¶28    Deborah appears to argue that the court faulted her for Darin's loss of parenting time during the 2015 summer when, in fact, Deborah alleges it was the result of the court's misunderstanding of the SCRA stay. It is unnecessary, however, to address whether the SCRA prevented the court from taking any action, even to enter an order establishing interim parenting time for 2015. The undisputed facts are that Deborah continued for years 2012, 2013, and 2014 to allow summer visitation with Darin of nearly six weeks, despite the absence of any provision in the 2008 Plan providing for those years. Therefore, Darin exercised summer parenting time even though the 2008 Plan made no provision for those particular years. Darin continued pursuing his obligation of shared parenting by communicating with Deborah that he wanted A.E.B. to visit in the 2015 summer, even if for only a month. Despite his efforts, Deborah refused to allow A.E.B. to visit, maintaining instead that the SCRA stay had abated the 2008 Plan. However, nothing precluded Deborah from ensuring Darin had parenting time, as she had previously done for three years in the past, although not specifically ordered to do so. Thus, it was Deborah, and not

16

Darin, who attempted to distort to her advantage the provisions of the SCRA. The court's findings that Deborah unreasonably limited Darin's parenting opportunities and that the summer of 2015 was the first time Darin was not able to exercise summer visitation in 14 years were not clearly erroneous. The record supports the court's findings regardless of whether the court misunderstood the stay provisions of SCRA.

¶29 Deborah also argues that the court failed to give appropriate weight to A.E.B.'s wishes to spend summers in Montana. Section 40-4-219(1)(c), MCA, concerning amendments of parenting plans, provides that the court "may" consider that "the child is 14 years of age or older and desires the amendment[.]" The court interviewed A.E.B. in chambers once A.E.B. turned fourteen and noted that A.E.B. had expressed she would like less time at her father's home. The court expressly stated that it had taken A.E.B.'s wishes into consideration. The court, however, also expressed its concern that Deborah was encouraging A.E.B. to limit her time with Darin; that Deborah had a great deal of influence over A.E.B; that A.E.B. was also being encouraged by the GAL to believe she would not have to spend time in Virginia with her father; and that Darin was not provided an equal opportunity to acquire information or have his input heard in the dispute. Most importantly, however, the court found that both Deborah and the GAL failed to appreciate the significance of A.E.B. continuing a relationship with her father as being in A.E.B.'s best interests. Based on the evidence that had been presented, the court was justified in its concern that A.E.B.'s stated preference to spend summers in Montana with Deborah was being encouraged by Deborah and the GAL.

¶30 The court was charged with an unenviable task: evaluating the testimony of a fourteen-year-old in the context of her parents' acrimonious disputes and, more particularly, conducting such an evaluation where one parent had substantially less influence and lived several thousand miles away from A.E.B. The court was correct in not simply following A.E.B.'s wishes, even assuming they fairly represented her position—because at fourteen, A.E.B. cannot be assumed to know necessarily what is in her best interests. Indeed, because A.E.B. was only fourteen and not emancipated, and because her parents could not decide what was in her best interests, the court had to make the decision. The court could not abdicate its responsibility for making the decision when the parents were unable to agree, especially when a committed parent was asking the court for the opportunity to parent. *See Steab*, ¶ 22 (finding that the right of a natural parent to parent one's child is a constitutionally protected, fundamental liberty interest). The court considered the wishes of A.E.B. and limited Darin's time from what normally had been 6 weeks to 4 weeks during the month of July. Deborah failed to demonstrate that any findings of the court were erroneous, or that the court did not consider A.E.B.'s desire for the amendment. Indeed, the court amended the parenting plan so that A.E.B. would have less time in Virginia.

¶31 We conclude that the court's findings are not clearly erroneous and that the court did not abuse its discretion when it ordered the June 3, 2016 Amended Parenting Plan.

¶32    2.  *Whether Deborah's appeal of the separate order of contempt is from a final judgment.*

¶33    On August 4, 2016, following a hearing, the court held Deborah in contempt for her failure to abide by the shared parenting obligations of the June 3, 2016 Amended Parenting Plan.  Specifically, the court found that Deborah had encouraged A.E.B. not to visit Darin in Virginia.  The court, however, has not decided the reasonableness of attorney's fees nor assessed an amount for fees and costs.

¶34    We have recognized that a contempt proceeding in a family law matter is entirely independent of the civil action out of which it arose.  *Kuzara*, 211 Mont. at 48, 682 P.2d at 1374.  Further, in civil cases, an aggrieved party may appeal from "a contempt judgment or order in a family law proceeding when, and only when, the judgment or order appealed from includes an ancillary order entered as a result of the contemptuous conduct which affects the substantial rights of the parties involved[.]"  M. R. App. P. 6(3)(j).

¶35    We conclude that Deborah has the right to separately appeal the order of contempt pursuant to *Kuzura* and M. R. App. P. 6(3)(j).  However, Deborah must also comply with the rule that "any decree which leaves matters undetermined is interlocutory in nature and is not a final judgment for purposes of appeal."  *Kircher*, 261 Mont. at 229, 861 P.2d at 929; *Griffin*, 260 Mont. at 135, 860 P.2d at 85.  Montana Rule of Appellate Procedure 4(1)(a) provides:  "[a] final judgment conclusively determines the rights of the parties and settles all claims in controversy in an action or proceeding, including any necessary determination of the amount of costs and attorney fees awarded or sanction imposed."  Here, the contempt order is not a final judgment because it lacks the court's decision

regarding the amount of attorney's fees and costs. Therefore, although Deborah may appeal the contempt order pursuant to M. R. App. P. 6(3)(h), which allows for appeals from an order of contempt in family law matters, it is not the court's final decision on the contempt matter. As such, we dismiss without prejudice Deborah's appeal of the August 4, 2016 order holding her in contempt.

## CONCLUSION

¶36 The District Court's June 3, 2016 order adopting an Amended Parenting Plan is affirmed; the appeal of the August 4, 2016 contempt order is dismissed without prejudice.


/S/ LAURIE McKINNON


We Concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE


Chief Justice Mike McGrath, dissenting.


¶37 Occasionally there are cases that demonstrate the inadequacies of our courts to appropriately resolve highly contested family disputes involving the custody and placement of innocent children. That is particularly true when parents are determined to misuse our adversary system of dispute resolution to persist in a litigation posture designed to assign blame and settle grudges, for real or perceived misconduct, of the other parent by undermining and denigrating the former spouse. Final resolution of such disputes can take

years; meanwhile, the children suffer the consequences of the parents' inappropriate behavior. The best interest of the child is relevant only to the extent that it provides "a slogan" for the parties to pursue their own selfish interests.

¶38 This is clearly one of those cases. A.E.B. has endured years with this dispute dominating her young life.

¶39 At this point in time, A.E.B. is sixteen years old and capable of making her own decisions regarding the course of her life until she reaches eighteen. Who are we to tell her she has made the wrong decision?

¶40 Appellant's motion to amend the parenting plan was filed on April 21, 2014. The District Court's decision was filed on June 13, 2016. For various reasons, it has taken over two (now almost three) years to resolve the motion. During that time A.E.B. has grown and matured—a significant period of development that the Courts have not recognized.

¶41 The decision of the District Court, in my view, was not in the best interest of this child.

¶42 I dissent.

/S/ MIKE McGRATH